# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

JESSE J. MORMAN,

                          Petitioner,

         - v -                                    9:18-CV-1338
                                                   (MAD/DJS)
SUPERINTENDENT,[1]

                          Respondent.


**APPEARANCES:**                    **OF COUNSEL:**

JESSE J. MORMAN
Petitioner, *Pro Se*
13-B-1990
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

HON. LETITIA JAMES                  PAUL B. LYONS, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Since filing the Petition, Petitioner has been transferred to Mid-State Correctional Facility. The Clerk is directed to update the Court docket to name the Superintendent of Mid-State Correctional Facility as Respondent since "the proper respondent in a habeas corpus petition is the officer having custody of the applicant." *Perich v. Mazzuca*, 2007 WL 2455136, at *1 (E.D.N.Y. Aug. 23, 2007) (citing Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts).

<u>**REPORT-RECOMMENDATION and ORDER**</u>[2]

*Pro se* Petitioner Jesse Morman is currently incarcerated at Mid-State Correctional

Facility.  He seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner's

incarceration stems from his conviction on May 15, 2013 for, *inter alia*, four counts of

Criminal Possession of a Controlled Substance in the Third Degree and two counts of

Criminal Sale of a Controlled Substance in the Third Degree.  Dkt. No. 18-1, State Court

Record ("SR.") at pp. 166-169.[3]  Petitioner was found to be a second felony offender by

the trial court, and on June 27, 2013, was sentenced to a determinate aggregate term of

30 years imprisonment and three years of post-release supervision. SR. at pp. 8-9; Dkt.

No. 18-2, Trial Transcripts ("TR.") at pp. 609-612.[4]  The Appellate Division, Fourth

Judicial Department, unanimously affirmed the conviction, but reduced Petitioner's

sentence by half, to a determinate aggregate term of 15 years imprisonment.  *People v.

Morman*, 145 A.D. 3d 1435 (4th Dep't 2016); *People v. Morman*, 145 A.D. 3d 1439 (4th

Dep't 2016).

---

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Citation to the state court record at Dkt. No. 18-1 is in the form "SR." followed by the page numbering provided by Respondent.

[4] Citation to the state court transcripts at Dkt. No. 18-2 is to the page numbers assigned by the Court's CM/ECF system.

Petitioner asserts the following grounds for habeas relief: (1) that his trial counsel was ineffective because he failed to object to the alleged improper sealing of his drug sale indictment and failed to move to suppress certain evidence; (2) that evidence was obtained pursuant to an unconstitutional inventory search; (3) that the trial jury violated his constitutional rights because two prospective jurors were overheard making comments indicating that Petitioner was already guilty; (4) that the trial court erred by permitting a police investigator to offer improper hearsay and opinion testimony; and (5) that certain isolated remarks of the prosecutor during summation were improper.  Dkt. No. 1, Pet.

Respondent opposes the Petition and contends that the application should be denied.  Dkt. No. 16, Resp.'s Mem. of Law.  Petitioner has submitted a Traverse.  Dkt. No. 27.  For the reasons that follow, it is recommended that this action be dismissed in its entirety.

## I.  BACKGROUND

On January 5, 2012, Sgt. Jeremy Young, working an undercover detail for the Onondaga Sherriff's Department and acting on a tip from a confidential informant, organized a controlled buy with Petitioner Jesse Morman.  SR. at pp. 45 & 431; Tr. at pp. 98-99 & 365-372.  In particular, Sgt. Young called Mr. Morman on a cell phone and asked him to meet him on Gifford Street in Syracuse to sell him cocaine.  SR. at pp. 45 & 431; Tr. at pp. 98-99.  Immediately before going to location, Sgt. Young viewed a photograph

2

of Petitioner. SR. at pp. 45 & 431; Tr. at pp. 99-101. According to Sgt. Young, he met with Petitioner at the agreed-to location at 6:30 p.m. and climbed inside Petitioner's car where Petitioner sold him $120 worth of cocaine. SR. at pp. 45-46 & 431; Tr. at pp. 99, 103, & 360. After the controlled purchase, Sgt. Young went back to his office and identified Petitioner from the same photograph he looked at before the transaction. SR. at pp. 46 & 431; Tr. at p. 99.

On January 10, 2012, at 5:20 p.m., Sgt. Young again participated in an undercover purchase of $80 worth of cocaine at the same location, inside Petitioner's car. SR. at pp. 46 & 434; Tr. at pp. 100 & 104. Once again, Sgt. Young viewed Petitioner's photograph both before and after the transaction. SR. at pp. 46 & 434; Tr. at p. 102. Petitioner was not arrested immediately after either of these drug transactions. Tr. at p. 370.

Three months later, on April 12, 2012, Petitioner was pulled over by the New York State Police in Syracuse for speeding. SR. at pp. 105-110. After discovery of an outstanding warrant, Petitioner was arrested and detained. *Id*. As detailed at length hereafter, an inventory search of Petitioner's vehicle was conducted, which discovered 17.23 grams of powder cocaine, baggies, and a digital scale. SR. at pp. 109 & 113. $1200 in currency was also found on Petitioner's person. SR. at p. 109. *Miranda* warnings were administered. SR. at p. 105; Tr. at p. 21. Petitioner allegedly told the police that he was "relieved the madness was over and he smoked a lot of stuff, cocaine, at the Red Roof"

3

and he had purchased $700 of cocaine in Syracuse and smoked some of it earlier with "a girl." SR. at pp. 123 & 132; Tr. at pp. 23 & 78.

On May 16, 2012, the first Indictment against Petitioner was handed up by the Onondaga County Grand Jury. SR. at pp. 66-68, Indictment 2012-0466-1. Petitioner was charged in that Indictment with two counts of Criminal Possession of a Controlled Substance in the Third Degree, two counts of Criminal Use of Drug Paraphernalia in the Second Degree, driving while ability impaired,[5] operating outside restrictions, and driving in excess of the speed limit. *Id.* These charges all arose out of the April 12, 2012 traffic stop. *Id.*

On November 21, 2012, the People of the State of New York filed a second four-count Indictment charging Petitioner with two counts of Criminal Sale of a Controlled Substance in the Third Degree and two counts of Possession of a Controlled Substance in the Third Degree. SR. at pp. 13-15, Indictment 2012-1102-1. These charges related to the January 2012 undercover buys with Sgt. Young. *Id.*

Defense counsel filed Omnibus Motions in relation to both Indictments, including a request that the county court review the grand jury record and the sufficiency of the Indictments. SR. at pp. 17-23 & 70-91. Hearings were held and the state court ruled that

---

[5] The People moved to dismiss the DWAI by Drugs charge based upon the negative toxicology report, SR. at p. 111, and the Motion was granted.

the evidence before each grand jury was legally sufficient.  SR. at pp. 44-47 & 149-157.

The prosecutor then moved to consolidate the two Indictments, which Motion was

opposed by defense counsel.  Tr. at p. 108.  On April 2, 2013, the County Court granted

the Motion to Consolidate.  *Id.*   Thereafter, a three-day jury trial was held from May 13,

2013 to May 15, 2013.  Tr. at pp. 119-598.  Petitioner was found guilty on all counts.  SR.

at pp. 166-169; Tr. at pp. 594-597.

On June 27, 2013 the Onondaga County Court sentenced Petitioner to an aggregate

30-year prison sentence.  SR. at pp. 8-12; Tr. at pp. 602-612.   Petitioner appealed his

conviction and sentence to the Appellate Division, Fourth Department, which affirmed

the conviction but modified the sentence as a matter of discretion in the interest of justice

by reducing the sentence on each count of Criminal Possession of a Controlled Substance

in the Third Degree to a determinate term of five years of imprisonment.  *People v.*

*Morman*, 145 A.D.3d at 1440.  Leave to appeal to the New York Court of Appeals was

denied.  *People v. Morman*, 29 N.Y.3d 999 (2017).

On November 28, 2016, Petitioner filed a *pro se* Motion pursuant to New York

Criminal Procedure Law ("CPL") section 440.  SR. at pp. 333-396.  That Motion, which

was later supplemented, SR. at pp. 403-419, argued that Petitioner was denied effective

assistance of counsel on the grounds that his attorney did not object to the alleged

defective second sealed Indictment; that counsel did not properly argue that the inventory

5

search was improper; that his attorney failed to properly challenge the police officer's identification of him; and that there was insufficient corroboration for the January drug sale charges. SR. at pp. 338-358 & 403-419. The People opposed the Motion, noting that the claim was both procedurally barred and devoid of substance. SR. at pp. 397-400.

On December 27, 2017, Petitioner's CPL § 440 Motion was denied. SR. at pp. 463-468. Judge Doherty agreed that his claim was procedurally barred because there were sufficient facts in the record to have raised these issues on direct appeal, but Petitioner failed to do so. SR. at p. 465. Proceeding beyond the procedural bar, the Judge concluded that Petitioner's claims were meritless. The court ruled that there was no obligation of the District Attorney's Office to notify Petitioner of the grand jury action because there was no current undisposed felony charge pending in local court. SR. at p. 466. The court also noted that it was perfectly appropriate to seek a sealed indictment in light of the involvement of an undercover police officer, thereby protecting the disclosure of his identity. *Id.* Accordingly, it did not represent ineffective assistance for counsel not to challenge the sealing of the second Indictment, especially where defense counsel had already moved the court to inspect the grand jury minutes to determine whether legally sufficient evidence was presented to the grand jury and whether the grand jury proceedings were defective. SR. at p. 466. Counsel also moved to suppress evidence by arguing that it was improperly acquired, moved to suppress statements made to law

6

enforcement personnel, and moved to suppress an in-court identification. SR. at pp. 466-467. In conclusion, the court reviewed the performance of defense counsel and concluded that such counsel did provide meaningful representation to Petitioner, and therefore denied Petitioner's 440 Motion. SR. at p. 467. This proceeding followed.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of review under section 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. at 412.  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  A state court decision is an "unreasonable application" of established Supreme Court precedent

"if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(e)(1)).

## III. DISCUSSION

### A. Petitioner's Fourth Amendment Claim

As an initial matter, as his second basis for habeas relief, Petitioner maintains that evidence found in his vehicle, including cocaine and a digital scale, should have been suppressed because they were obtained as a result of an unlawful inventory search. Pet. at pp. 6-7. Such a claim, however, is not proper for habeas review.

The facts regarding the search of Petitioner's vehicle were set forth at the *Mapp/Huntley* hearing that was held by the trial court on October 10, 2012. Tr. at pp. 15-85. According to the sworn testimony, New York State Trooper Christopher Vincentini was patrolling Interstate 81 in Syracuse, New York when he observed Petitioner traveling at 85 miles an hour in a 55 mile an hour zone. Tr. at pp. 17-18. As the Trooper spoke with Petitioner, the driver and sole occupant of the car, he observed an overabundance of

9

air fresheners.  Tr. at pp. 18-19.  Questioning of Petitioner established that he only had a driver's permit, and a subsequent search of police records disclosed that there was an outstanding warrant for Petitioner's arrest.  Tr. at pp. 19-20.  At that time Petitioner was detained and advised that an inventory search was to be conducted of his automobile.  Tr. at p. 21.  He did not consent to the search.  Tr. at p. 48.  The state police witnesses testified to the Department's formal policy for conducting inventory searches and its rationale - to protect the owner's property, to protect the police against false claims of stolen property, and to protect the police from potential danger.  Tr. at pp. 21 & 29; SR. at pp. 164-165. A copy of the inventory search form was provided to the court.  SR. at p. 163.

During the search the police discovered cocaine at the bottom of two bags of clothing, a digital scale, and multiple Ziploc baggies.  Tr. at pp. 22, 26-27, & 80-81.  The search initially occurred on the side of the road, but the vehicle was then driven to the state police barracks where the inventory search was finished.[6]  Tr. at p. 78.  Ultimately the car was not impounded, as Petitioner's daughter came to the station and was provided the car to drive home.  Tr. at p. 51.  Counsel for Petitioner cross-examined the police officers at length regarding the search, questioning the thoroughness and accuracy of the inventory report, the location where the inventory occurred, and the fact that the car was

---

[6]  The car was not towed, as there was an available police officer to drive it, and a desire to save Petitioner the cost of a tow charge.  Tr. at p. 78.

10

never impounded. Tr. at pp. 30-32, 34-52, 55-56, & 82.  After argument and briefing, the

trial court ruled that the inventory search was proper and that the items obtained because

of that search were admissible.  SR. at pp. 153-157.

This issue was fully raised on appeal, and the Appellate Court concluded:

We reject defendant's contention in appeal No. 2 that the court erred in
refusing to suppress the physical evidence recovered during an inventory
search of his vehicle following the traffic stop initiated by a state trooper.
Following a lawful arrest of the driver of an automobile that must then be
impounded, the police may conduct an inventory search of the vehicle
pursuant to established police regulations. Contrary to defendant's
contention, we conclude that the initial determination of the police to
impound the vehicle was proper inasmuch as defendant, who was the sole
occupant of the vehicle, was placed under arrest after the Trooper
discovered that he had an outstanding warrant, and thus was unable to drive
the vehicle. Contrary to defendant's further contention, the police were not
required to explore alternatives to impoundment. The record does not
support defendant's contention that the inventory search was a mere pretext
to uncover incriminating evidence; rather, the testimony established that the
Trooper's intention for the search was to inventory the items in the vehicle.
We further conclude that, consistent with the state police regulations
admitted in evidence at the hearing that defined the permissible scope of an
inventory search, the Trooper acted reasonably in searching the open
garbage bags he observed in the rear seat of the vehicle.  Moreover, contrary
to defendant's contention, the Trooper properly prepared a meaningful
inventory list, and the inventory search was not rendered invalid because
the [Trooper] failed to secure and catalogue every item found in the vehicle.

*People v. Morman*, 145 A.D.3d at 1436 (internal citations and quotations omitted).

Any challenge to the search of Petitioner's automobile in this proceeding is

therefore foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465

11

(1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. "The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed." *Collier v. Superintendent, Coxsackie Corr. Facility*, 2020 WL 2341062, at \*11 (N.D.N.Y. May 11, 2020) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983)).

The Second Circuit "has made clear that a fourth amendment claim may not be considered by a federal habeas corpus court if the state has provided an opportunity fully and fairly to litigate it." *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.*

12

at 72. "It is well-settled that New York State provides for a full and fair opportunity to litigate a Fourth Amendment claim." *Evans v. Giambruno*, 2000 WL 1876642, at *1 (S.D.N.Y. Dec. 26, 2000) (citing *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991)). And the record reflects that Petitioner took advantage of his opportunity to fully adjudicate the matter in state court. *See generally* Tr. at pp. 15-85. Petitioner Morman is therefore not entitled to habeas corpus relief on his claim of an unlawful inventory search.

## B. Petitioner's Claim Regarding the Jury Empanelment

Jury selection in the case of *People v. Morman* began on the morning of May 9, 2013. Tr. at pp. 110-309. The Court started with the questioning, but both the prosecutor and defense counsel were allowed to ask substantive questions. *Id.* Many issues were raised during voir dire, including potential jurors', or their close family members', interactions with the criminal justice system, concerns with regard to drug laws and the potential legalization or decriminalization of drugs, the burden of proof in a criminal case, and other related issues. *Id.* By the middle part of the afternoon nine members of the jury pool had been selected and those nine were then allowed to take a break. Tr. at pp. 225-227.

When the next set of 21 jurors was called, the process began again. One prospective juror was called and indicated during the sidebar that he did not believe he would be a good juror because "I just think we protect the guilty on a lot of things." Tr.

13

at p. 231. That potential juror was immediately excused. *Id.* Another juror indicated he did not want to be there, and that prospective juror was excused as well. Tr. at p. 233. After several other potential jurors were questioned at the sidebar, the next candidate indicated that, while she did not have any issues sitting on the jury, she did have a concern to report: "I was sitting with a group of people in the back who are all joking and saying that, obviously he's guilty, and I don't think that's fair, that they should be on the jury if they are going to come in with that mindset." Tr. at p. 243. The Court inquired further, and the prospective juror was able to identify two of the individuals who were engaged in the conversation. Tr. at pp. 247-248. At that point the Court suggested simply excusing the two individuals identified, without having a contentious sidebar, a suggestion with which defense counsel agreed. Tr. at p. 248. The Court did allow defense counsel to ask the remaining jurors about discussions that they had with other jurors. Tr. at pp. 252-253. Defense counsel accepted that invitation, and asked the jury panel "[h]as anyone had discussions with their fellow jurors about the possible guilt or innocence of Mr. Morman during the time that you've been here today?" and "[h]as anyone heard of their fellow jurors expressing opinion that – – wording to the effect of, he's obviously guilty?" Tr. at p. 290. Only the reporting juror, Ms. Wellington, responded in the affirmative. *Id.*

Respondent argues that any constitutional claim regarding the empanelment of the criminal jury is both unexhausted and procedurally barred. Resp.'s Mem. of Law at pp.

30-38.  A habeas petitioner must exhaust available state remedies, or establish that there is either an absence of available state remedies or that such remedies cannot adequately protect his rights before proceeding in federal court.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  Claims are exhausted when they have been "fairly presented" to the state courts.  *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  *Daye v. Attorney General of New York*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999).  To satisfy the exhaustion requirement a petitioner must present his claims to the New York Court of Appeals.  *Tyson v. Keane*, 159 F.3d 732, 735 (2d Cir. 1998) ("Exhaustion requires presenting a federal claim to the highest court of the state.").

In the present case, the issue of the alleged jury misconduct was in fact raised by Petitioner's counsel in the brief to the Appellate Division, but the argument presented by Petitioner relied exclusively on New York State law.  SR. at pp. 237-239.  All the cases cited by appellate counsel were New York State cases which generally dealt with New

15

York State decisional law, or that provision of the New York State Criminal Procedure Law that deals with the removal of a juror for misconduct, N.Y. CPL 270.35. No federal case was cited, nor was a federal constitutional violation alleged. The Court takes note that in other portions of Petitioner's comprehensive brief before the Appellate Division specific references were made to federal law. *See* SR. at p. 225 ("The denial of suppression of the identification violates Mr. Morman's due process rights under the New York State *and* United States Constitution. Thus, this case presents federal constitutional claims as well.") (emphasis added). The Court agrees with Respondent that because of the procedural posture of this case, Petitioner's claim of juror misconduct under the Sixth Amendment to the United States Constitution is both unexhausted and procedurally defaulted. *E.g. Blond v. Graham*, 2014 WL 2558932, at *13 (N.D.N.Y. June 6, 2014).

Were the Court to proceed to the merits of this constitutional claim, it would deny it on this basis as well. Voir dire examination of prospective jurors is important because it permits counsel to make informed decisions concerning the use of peremptory challenges and challenges for cause. *See Ham v. South Carolina*, 409 U.S. 524, 532 (1973) (Marshall, J., concurring and dissenting). Nevertheless, jury selection is, as has been repeatedly noted by the Supreme Court, "particularly within the province of the trial judge." *Skilling v. United States*, 561 U.S. 358, 386 (2010) (quoting *Ristaino v. Ross*, 424 U.S. 589, 594-595 (1976)). Furthermore, a trial court's determinations regarding bias and

taint, or lack thereof, of potential jurors in connection with a habeas action is entitled to a statutory presumption of correctness and may be overturned only after a showing of manifest error. *Patton v. Yount*, 467 U.S. 1025, 1032, 1036, 1038 (1984).

In this case the trial court was presented with a report of misconduct of two identified potential jurors regarding their preconceived notions of guilt. Rather than exacerbate this issue through further questioning, the Court decided to excuse the two identified prospective jurors without requiring the prosecutor or defense counsel to utilize any peremptory challenge. Further, the Court allowed defense counsel to inquire as to this issue, which was in fact done. Based upon the response, defense counsel then had an opportunity to exercise further preemptory challenges. The claim presented to the Appellate Division, and presumably here as well, is that there may have been other jurors who were tainted by the statements reported by Ms. Wellington. Such a claim is wholly speculative, however.[7]  Nothing has been presented to overcome the trial court's conclusion that the panel, after the exclusion of certain members and with proper instruction, was fair and unbiased. *E.g. Brown v. Smith*, 171 Fed. Appx. 889, 891 (2d Cir. 2006) ("Brown's argument that the comment overheard by the court officer proves that

---

[7] For example, who is to say that there were any more than the two other prospective jurors that heard this banter, and who were then dealt with by the trial court's dismissal order? If there were more than two people involved, can it be logically concluded that those additional jurors were not the ones that the Court had previously dismissed when they opined either that we protect the guilty too much, or that they did not want to be there?

other venire members knew of the victim's mother's statements does not rise above the level of mere speculation. This argument runs contrary not only to the presumption of correctness that we must accord the verdict, . . . but also to the evidence in the record. The four venire members who engaged in a conversation with the victim's mother were promptly excused.").   The vast discretion possessed by the trial court in dealing with issues on voir dire in this case was properly exercised, and there was no constitutional violation.

### C.  Ineffective Assistance of Counsel Claim

In his Petition, Morman maintains that he was denied effective assistance of trial counsel.  Pet. at pp. 7-9.  "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'"  *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington v. Richter*, 562 U.S. at 104 (quoting *Strickland v. Washington*, 466 U.S. at 689)  A person challenging a conviction thus must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. at 687. Establishing prejudice requires Petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* test imposes a "high bar." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). On this record, Petitioner cannot make this required showing.

Petitioner points to a few salient issues that he believes show that his counsel was deficient. Petitioner maintains that his counsel should have challenged the fact that he was the subject of a sealed Indictment in connection with the January 5, and January 10, 2012 drug sales, which Indictment was not unsealed until November 28, 2012. He asserts that there has been no proper reason provided for the sealing order. Further, he maintains that his counsel should have moved to suppress Sgt. Young's identification of Petitioner as unduly suggestive, and should have moved to dismiss the drug sale charges on the grounds that there was insufficient corroborating evidence. Pet.; SR. at pp. 345-351.

Starting with the identification issue, defense counsel did in fact move to suppress the identification by Sgt. Young upon the grounds that it was unduly suggestive, and he argued in favor of that position before the court. SR. at pp. 18-23; *see also* Tr. at pp. 101-105. Ultimately, however, the court ruled against the suppression argument by noting that the identification, made by a trained police officer, was merely confirmatory and not so remote in time as to be unduly suggestive. SR. at pp. 46-47. Despite that setback,

19

defense counsel continued to make compelling points before the jury, questioning the identification, emphasizing that the Officer had no prior dealings with Petitioner, noting that the interior lighting of the car was off, that there was no video taken, and that there was a significant delay between the event and the ultimate arrest. Tr. at pp. 372-378 & 507-523. Further, defense counsel was able to successfully preclude a separate identification of Petitioner by a different police officer. Tr. at pp. 494-504.

Nevertheless, Petitioner argues that his counsel was ineffective by not raising the issue that the police officer viewed his photograph both *before and after* the drug sales in question, and that this made the identification unduly suggestive. The Appellate Division ruled this argument was not preserved for review, as it was not raised below. *People v. Morman*, 145 A.D.3d at 1435-36. This Court agrees with Respondent's argument and the reasoning of the trial court that the fact that the Officer viewed Petitioner's photograph prior to meeting with him, and then again after the drug sale, where both occurred within a short period of time, was still confirmatory in nature and would not have affected the outcome of the motion or the trial. *See People v. Adio*, 111 A.D.3d 757, 758 (2d Dep't 2013) ("Contrary to the defendant's contention, the officer's viewing of a single photograph of the defendant prior to purchasing crack cocaine from him did not constitute an identification. Furthermore, the officer's viewing of the defendant's photograph shortly after the purchase was confirmatory. Thus, the County Court properly found that

20

the defendant was not subjected to impermissibly suggestive identification procedures, and properly denied that branch of his omnibus motion which was to suppress identification testimony.") (internal citations omitted).

Next, Petitioner argues that his counsel was ineffective because he failed to argue that there was no corroborating evidence for the two drug sale charges, and to point out that the prosecutor failed to establish the existence of a confidential informant that was the trigger for those sales. Pet. at p. 4. Regarding the issue of the confidential informant, trial counsel, for good reason, made a tactical decision to exclude any reference to the confidential informant at the trial.

On the issue of corroboration, corroboration of a witness's testimony concerning criminal conduct is not required under federal law "so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *Parks v. Sheahan*, 104 F. Supp. 3d 271, 283 (E.D.N.Y. 2015) (quoting *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003)). Corroboration, or the lack of corroboration of an accomplice's testimony, "goes only to the weight of the evidence, not to its sufficiency," and a challenge to the weight of the evidence "is a matter for argument to the jury[.]" *United States v. Hamilton*, 334 F.3d at 179. While New York State does have a statutory provision requiring corroboration of accomplice testimony, N.Y. Crim. Proc. Law § 60.22 (McKinney), even that statute would not apply here as an undercover police

officer, or an agent of the police, is not an "accomplice" for purposes of that statute. *E.g.* *People v. Johnson*, 287 A.D.2d 792, 793 (3d Dep't 2001), *leave to appeal denied*, 97 N.Y.2d 730 (2002).

The Court then turns to Petitioner's final argument that his counsel was deficient because he failed to challenge the second Indictment (2012-1102-1) handed up by the Onondaga Grand Jury as being improperly sealed, and to note the lack of a valid Superior Court warrant. As noted above, Petitioner was first arrested for possession of drugs on April 12, 2012 after a stop and search of his vehicle on the interstate in Syracuse. SR. at pp. 448-450. While he was in custody, he was then indicted for those possession charges on May 16, 2012. He was arraigned and had various court appearances with his counsel. While that case progressed, the Onondaga Grand Jury then considered Petitioner's involvement in the two prior January 2012 sales of drugs and issued a four-count Indictment on those charges on November 21, 2012. SR. at pp. 13-15. Thus, while the drug sales occurred first, Petitioner was not arrested, and no grand jury action was undertaken, for approximately 11 months.

On November 28, 2012, Petitioner was still in custody on the first Indictment and appeared in court to receive a trial date and the court's decision on a previously filed Motion. Tr. at pp. 86-90. During that court appearance, the court advised defense counsel and Petitioner that another Indictment regarding the January drug sales had been issued.

*Id.* The court referred to this Indictment as being a "sealed indictment." Tr. at pp. 87-88. Petitioner was arraigned on the new drug sale charges, a not guilty plea was entered on his behalf, and he was continued in custody. *Id.* Petitioner maintains that there is no valid warrant for this proceeding.[8]

It is not abundantly clear as to precisely what violation is being alleged in the Petition in connection with this argument. In general terms, Petitioner may be arguing, as his counsel did in his opening at trial, that he should have been immediately arrested for the January drug sales, or that he was only prosecuted for the January sales when it appeared that there might be an issue concerning the inventory search of his vehicle in April 2012. *See* Tr. at pp. 336-337 ("[W]hy was no arrest made at that time?" "Why was he allowed to roam free . . ."). However, while there is a constitutional prohibition against arresting someone without probable cause, there is no constitutional right to an immediate arrest once probable cause exists, a proposition that runs counter to the "deep-rooted nature of law-enforcement discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 761 (2005). Insofar as Petitioner believes that he should have been charged by way of a complaint initially, there is no constitutional or even New York State statutory requirement that this occur. Rather, the prosecutor can seek an indictment first directly

---

[8] Issuance of a separate warrant of arrest that contained the second Indictment number is of no moment, as Petitioner was already in the custody of the State of New York on a related matter that was ultimately joined for trial.

from the grand jury, and because of the secrecy of those proceedings, the criminal defendant may never receive notice that such a proceeding is ongoing.  N.Y. Crim. Proc. Law § 190.50 (McKinney) (Practice Commentaries) ("As a general rule, the target of a Grand Jury investigation is not entitled to any sort of notice that a Grand Jury proceeding against him is in progress or about to occur.").  Nor does a defendant have a federal constitutional right to testify before the grand jury.  *Davis v. Mantello*, 42 Fed. Appx. 488, 491 (2d Cir. 2002); *Stahl v. Superintendent*, 2021 WL 1163631, at *9 (N.D.N.Y. Mar. 25, 2021).

Nor is there any showing of prejudice.  The Indictment against Petitioner was handed up by the grand jury on November 21, 2012, and even assuming that it was improperly sealed for seven days until Petitioner received notice of it at the November 28, 2012 court proceeding, there is no showing of any negative consequence that resulted from this weeklong delay.  Petitioner cites several federal cases dealing with an alleged improper sealing of an indictment, including the Eastern District case of *United States v. Slochowsky*, 575 F. Supp. 1562 (E.D.N.Y. 1983).  The cited cases all present a unique factual situation where an indictment was sealed and then unsealed *after* the statute of limitations had expired.  *Id.* at 1566 ("These two interests [the defendant's right to be timely prosecuted and the Government's right to avoid public notice of the charge leading to the defendant avoiding arrest] occasionally collide when, as here, an indictment is

returned and sealed prior to the expiration of the limitations period and unsealed after the period has expired."). In those cases, a holding that the sealing of the indictment was improper led the Court to conclude the statute of limitations would not be tolled until when they were made public and instead would run when the indictment was handed up. *Id.*; *United States v. Gigante*, 436 F. Supp. 2d 647 (S.D.N.Y. 2006). The statute of limitations on felony drug charges in New York is five years, N.Y. Crim. Proc. Law § 30.10 (McKinney), which is clearly not implicated here,[9] and therefore Petitioner can point to no prejudice that resulted from this sealing procedure.[10] Finally, any error in connection with the grand jury was cured by Petitioner's subsequent conviction following a jury trial. *Mesko v. Lilley*, 2019 WL 6493976, at *14 (N.D.N.Y. Dec. 3, 2019).

For all these reasons Petitioner has not established a meritorious claim for challenging the Indictment because it was sealed for seven days, and it therefore follows that defense counsel was in no way constitutionally deficient by failing to argue this precise issue. The Court notes that after Petitioner was arraigned on the second

---

[9] Similarly, under federal law, a five-year federal statute of limitations applies as the primary safeguard of the defendant's interest in avoiding a stale prosecution. 18 U.S.C. § 3282.

[10] This issue was raised in Petitioner's CPL § 440 motion, and the state court determined first, that the matter was not procedurally exhausted because it could have been raised on direct appeal and, second, that there were a myriad of appropriate reasons for sealing the Indictment, including ongoing investigations. This Court agrees with the state court's decision in this regard.

Indictment, his counsel did make appropriate motions, including a motion for the trial court to inspect the grand jury minutes.

Reviewing the record as a whole, the Court concludes that Petitioner was assigned dedicated and passionate trial counsel, whose representation on this difficult criminal case far exceeded the constitutional standard incorporated in the Sixth Amendment. Accordingly, the Court recommends that any claim of ineffectiveness be denied.

**D. Claims Regarding the Prosecutor's Summation and the Police Officer's Opinion Testimony**

Petitioner claims that the prosecuting attorney engaged in misconduct during her summation by "blatantly . . . exploiting the consolidation" of the Indictments.  Pet. at p. 9; SR. at pp. 233-236.  In particular, during the course of the prosecutor's summation, and in relation to the argument that Petitioner possessed the cocaine that was found during the traffic stop with the intent to sell it, she stated as follows: "Also, we already know defendant is a drug dealer because he sold cocaine to Sergeant Young January 5th and January 10th of 2012." Tr. at p. 539.  This comment does not constitute prosecutorial misconduct because, as noted in the Appellate Division's decision, consolidation of the two Indictments was proper precisely because "testimony concerning defendant's prior drug sales was admissible with respect to the issue of defendant's intent to sell the cocaine discovered as a result of the traffic stop." *People v. Morman*, 145 A.D. 3d at 1437

26

(internal citations and quotations omitted).  It was not unfair, therefore, for the prosecutor to make the argument that she did.

Further, defense counsel did not object to this portion of the prosecutor's argument, *see* Tr. at p. 539, or in connection with a separate claim that a narcotics officer submitted inadmissible hearsay evidence, and so the Appellate Division found these claims "unpreserved." *People v. Morman*, 145 A.D. 3d at 1438.  "Under the independent and adequate state ground doctrine, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Pierotti v. Walsh*, 834 F.3d 171, 176 (2d Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  "New York's contemporaneous objection rule, New York Criminal Procedure Law ('CPL') § 470.05(2), [ ] has long been considered an 'adequate and independent ground' that bars federal habeas review." *Santos v. Eckert*, 2019 WL 6895249, at *3 (N.D.N.Y. Dec. 18, 2019) (citing *Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011)).  The failure to object, therefore, bars review in this Court. *Id.*; *Evans v. Colvin*, 2018 WL 3069211, at *5 (N.D.N.Y. June 21, 2018).

A separate portion of the prosecutor's closing, however, was objected to and therefore is subject to the Court's review. During that summation the prosecutor, in

27

response to an argument of defense counsel about the lack of "prerecorded buy money" referenced her own experience:

> I have been doing drug cases for ten years. There is two different kinds of drug investigations. There is the drug investigations such as in this case, where the undercover has multiple investigations going on and they are arrested later on, and then there is buy/bust details, or neighborhood complaints are coming in and they send an officer to bang off people right on the street right then.

Tr. at p. 524.

Despite the objection, the trial court allowed the statement to remain before the jury. Petitioner maintains that this error warrants the granting of the Petition, but this Court, while not condoning the comments, disagrees. "The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited." *Ogletree v. Graham*, 559 F. Supp. 2d 250, 259 (N.D.N.Y. 2008). "To prevail on a prosecutorial misconduct claim, a *habeas* petitioner must demonstrate that the prosecutor engaged in 'egregious misconduct.'" *Williams v. Duncan*, 2007 WL 2177075, at *26 (N.D.N.Y. July 27, 2007) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990)). It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). That is particularly true where, as here, "[t]he record . . . demonstrates that the prosecutor's comment responded to defense counsel's summation, which is proper under New York law." *Jones v. Annucci*, 124 F. Supp. 3d

103, 126 (N.D.N.Y. 2015) (citing cases). Instead, the question on habeas review is whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 125 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Considering the limited nature of the prosecutor's remarks, that they were made in response to arguments of defense counsel, that the trial court instructed the jury that closing arguments are not evidence, and factoring in the weight of the evidence against Petitioner including drug sales with an undercover police officer, the Court easily concludes that the prosecutor's reference to her own experience in a small part of her summation did not create such an unfairness so as to deny Petitioner his right to a fair trial.

For similar reasons, the Court also concurs with the Appellate Division's conclusion that the opinion testimony offered by Investigator DiPirro, while improper, constituted harmless error considering the overwhelming evidence presented at trial. *People v. Morman*, 145 A.D.3d at 1438; *United States v. Londono-Tabarez*, 121 Fed. Appx. 882, 885 (2d Cir. 2005) (summary order) (holding that improper admission of DEA agent's expert testimony regarding the meaning of allegedly drug-related terms in a taped conversation was harmless error); *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003) (" . . . viewed in relation to the prosecution's formidable array of admissible

29

evidence, [DEA agent's improper testimony based upon hearsay] was merely corroborative and cumulative.").

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2). Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[11] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

---

[11] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: September 20, 2021
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

31